UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

JACKIE ROBINSON, EMMANUEL BOWSER,
LEON GUZMAN, SCOTT HARRISON,
FREDERICK INMAN, JOSE MARTINEZ,
CHARLES PANTON, MICHAEL RYAN and
RONALD SAINTILUS,

                              Plaintiffs,              **05 CV 9545 (GEL)(DF)**


              -against-


THE CITY OF NEW YORK, RAYMOND
KELLY, POLICE COMMISSIONER OF THE
NEW YORK CITY POLICE DEPARTMENT,
NELDRA      ZEIGLER,        DEPUTY
COMMISSIONER    OF      EQUAL
EMPLOYMENT OPPORTUNITY OF THE
NEW YORK CITY POLICE DEPARTMENT,
DONNA JONES DEPUTY INSPECTOR OF
THE    NEW    YORK    CITY    POLICE
DEPARTMENT, MICHAEL SCAGNELLI,
CHIEF   OF   THE   TRANSPORTATION
BUREAU OF THE NEW YORK CITY POLICE
DEPARTMENT, and ERNEST VAN GLAHN,

                              Defendants.
------------------------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS


McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
(212) 448-1100


NORMAN SIEGEL
260 Madison Avenue – 18th Fl
New York, NY 10016

*Attorneys for the Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................*i-ii*

PRELIMINARY STATEMENT .............................................................................2

FACTS ...............................................................................................................2

ARGUMENTS ....................................................................................................4

1.  Plaintiffs Are The Prevailing Party And Are Therefore Entitled
    To Attorneys' Fees And Costs Under 42 U.S.C. § 1988 .............................4

2.  Counsel Should Be Awarded The Full Fees Sought on This Application ..............5

    A.  Plaintiffs' Attorneys Expended A Reasonable
        Number Of Hours On This Litigation .........................................6

    B.  The Hourly Rates Sought Compare With The
        Prevailing Market Rates In This District.....................................7

        (i)    Current And Historic Rates ...........................................10

        (ii)   Case Specific Variables ................................................11

    C.  Plaintiffs' Presumptively Reasonable Fee.................................14

    D.  Plaintiffs' Presumptively Reasonable Fee Should Not Be Adjusted.........16

        (i)    Inspector Donna Jones...............................................16

        (ii)   Discrimination Claims...............................................17

        (iii)  Denial of overtime ..................................................18

        (iv)   Jose Martinez and Leon Guzman .................................20

        (v)    Placement of plaintiffs into performance
               monitoring in after 2005 ...........................................21

3.  Plaintiffs' Attorneys' Fees Are Fully Compensable Under Section 1988.............22

4.  Plaintiffs Are Entitled To Costs....................................................23

        (i)    Expert Fees ........................................................23

CONCLUSION  ..............................................................................26

## TABLE OF AUTHORITIES

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany and Albany County Elections,* 522 F.3d 182 (2d Cir. 2008) .........................................5, 11

*Attard v. City of New York*, No. 05 CV 2129, 2008 WL 1991107 (E.D.N.Y. May 5, 2008) .......25

*Bray v. City of New York*, 356 F.Supp.2d 277 (S.D.N.Y. December 23, 2004) ............................9

*Chan v. Sung Yue Tung Corp.*, 2007 WL 1373118, No. 03-Civ.-6048 (S.D.N.Y. May 8, 2007) ..........................................................................................*passim*

*City of New York v. Times' Up, Inc.*, 814 N.Y.S.2d 890 (Sup. Ct. NY Cty. 2006) ........................9

*Farrar v. Hobby,* 506 U.S. 103 (1992) ........................................................................................15

*Fleming v. City of New York*, No. 01 Civ. 8885, 2006 WL 2322981 (S.D.N.Y. Aug. 9, 2006) ..................................................................................................25

*Gierlinger v Gleason,* 160 F.3d 858 (2d Cir. 1998) ................................................................7, 10

*Gonzalez v. Bratton,* 147 F. Supp.2d 180 (S.D.N.Y. 2001) ........................................................18

*Grant v. Martinez,* 973 F.2d 96 (2d Cir.1992) ............................................................6, 16, 20, 21

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) ........................................................................4, 5, 16

*Hnot v. Willis Group Holdings Ltd.,* 2008 WL 1166309, No. 01-Civ.-6558 (S.D.N.Y. April 7, 2008) ......................................................................................*passim*

*Kassim v. City of Schenectady*, 415 F. 3d 246 (2d Cir. 2005) ........................................................4

*Lyons* v. *Cunningham*, 583 F.Supp. 1147 (S.D.N.Y. 1983).........................................................16

*Missouri v. Jenkins,* 491 U.S. 274 (1989) ...................................................................................10

*Monaghan v. SZS 33 Assocs., L.P.*, 154 F.R.D. 78 (S.D.N.Y. 1994) .........................................24

*Parish v. Sollecito*, 280 F.Supp.2d 145 (S.D.N.Y. 2003) ...........................................................16

*Quarantino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999) *(en banc)* ...................................18, 22

*Reed v. A.W. Lawrence & Co.,*95 F.3d 1170 (2d Cir. 1996) ...........................................................5

*Sugarman v. Village of Chester*, 213 F.Supp.2d 304 (S.D.N.Y. 2002) ........................................24

*Torres v. City of New York*, 2008 wl 419 306, 07 Civ. 3473 (S.D.N.Y. Feb 14, 2008) ..............10

*TSE v. UBS Financial Serv.*, 568 F.Supp.2d 274 (S.D.N.Y. 2008) ...............................................24

*Vikhu v. City of New York,* 2009 WL 1851019, No. 06-CV-2095
(E.D.N.Y. June 26, 2009) ...................................................................................7, 8, 13, 22

*Wiengarten v. Optima Communications Systems, Inc.* 544 F. Supp 2d 193
(S.D.N.Y. 2008).................................................................................................................6

*Wise v. Kelly,* 2008 WL 482399, 05 Civ. 5442 (S.D.N.Y. Feb. 21, 2008) ...................................10

## **STATUTES**

42 U.S.C. § 1988 ......................................................................................................*passim*

Federal Rules Civil Procedure 37 ...............................................................................24

## PRELIMINARY STATEMENT

On June 25, 2009, after a fourteen day trial, the jury returned a verdict in the plaintiffs'

favor finding that Captain Van Glahn had violated their civil rights by engaging in retaliatory

actions against seven of the nine plaintiffs in this action.  On July 15th, plaintiffs submitted a

motion for injunctive relief asking that all remnants of Van Glahn's retaliatory actions be

expunged from their personnel files and are awaiting the Court's determination.  Having

succeeded in this action, plaintiffs are entitled to attorneys' fees as provided under 42 U.S.C. §

1988.  As such, plaintiffs now submit their application for attorneys fees and costs requesting

$992,701 in legal fees and $132,937 in costs for McLaughlin & Stern LLP, and $153,270 in legal

fees for Norman Siegel.

## FACTS

In May 2004, Norman Siegel, Esq., and McLaughlin & Stern, LLP were retained by the

plaintiffs to present their discrimination and retaliation claims against Captain Ernest Van Glahn

("Van Glahn") and the NYPD.  Counsel then assisted the plaintiffs in the filing of claim forms

pursuant to the class action settlement in *Latino Officers Association et. al. v. City of New York,*

*et. al.*  (Index No. 99 Civ. 9568(LAK)(KNF))("LOA"), and drafted EEOC complaints on behalf

of the plaintiffs.  (*See* Decl. of Steve Hyman, dated July 16, 2009, ¶3 [hereinafter "Hyman

Decl."] and Decl. of Norman Siegel, dated July 16, 2009, ¶5 [hereinafter "Siegel Decl."]).

In November 2005 plaintiffs filed a complaint ("Complaint") seeking damages and

equitable relief under Title VII, §1981, §1983, and the New York City, and New York State,

Human Rights Laws, for discrimination and retaliation which occurred during Van Glahn's

tenure at Transit District 4 and subsequent to his departure.  The Complaint set forth the actions

2

that Van Glahn and the NYPD took against the plaintiffs including 1) the issuance of negative evaluations in 2004 and 2) the placement of plaintiffs in performance monitoring between June 2004 and May 2005.   The Complaint also requested equitable relief including "an injunction ... to remove the Performance Monitoring, negative evaluations ... from Plaintiffs' personnel records and NYPD records."[1]

At the conclusion of fact discovery in the spring of 2008, plaintiffs hired the Center for Forensic Economic Studies ("CFES") to prepare an expert report on the economic damages sustained by plaintiffs due to loss of overtime earnings.   The report was produced in order to aid in settlement discussions that were ongoing at the time.   However, settlement was not feasible. (*See* Hyman Decl. ¶¶ 14, 40)

The trial in this matter was initially calendared for March 2, 2009, and plaintiffs' trial preparation began in late November, 2008.   Thereafter the trial was rescheduled at the defendants' request and was held between the dates of June 1st and June 25th.   (*See* Hyman Decl. ¶¶ 15, 28)

On June 25th the jury returned a verdict finding that Van Glahn had violated plaintiffs' civil rights by 1) Retaliating against Plaintiffs Robinson, Saintilus, Bowser, Inman, Harrison, Panton and Ryan by causing them to fail their 2004 evaluations and 2) Retaliating against Plaintiffs Robinson, Saintilus, Bowser, Inman, Panton by causing the plaintiffs to be placed in performance monitoring in 2004 and 2005 and 3) Retaliating against Plaintiff Saintilus by changing his squad.   The jury awarded the seven plaintiffs damages in the amount of $235,000.

Having succeeded with these claims, plaintiffs now submit this application for attorneys' fees and costs. Counsel invested significant hours and resources into the successful prosecution of this case.   Its complexity, the number of plaintiffs, the volume of documents, defendants'

---

[1] Plaintiffs submitted a separate motion requesting injunctive relief on July 15, 2009.

deficient document productions, the extended duration of the litigation, and the contemporaneous

employment of the plaintiffs with the NYPD made this a complex and difficult case to litigate.

(*See* Hyman Decl. ¶¶ 7-9)

**ARGUMENT**

1. **Plaintiffs Are The Prevailing Party And Are Therefore Entitled To Attorneys' Fees And Costs Under 42 U.S.C. § 1988**

42 U.S.C. § 1988 provides that "[i]n any action or proceeding to enforce a provision of

sections 1981,…1983,…title VI of the Civil Rights Act of 1964…the court, in its discretion, may

allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the

costs…" The statute was enacted to ensure that private citizens, lacking the resources to fund a

litigation, would still have an opportunity to vindicate their civil rights. *See Hensley v.*

*Eckerhart,* 461 U.S. 424, 445 (1983). Section 1988 was created "in part to secure legal

representation for plaintiffs whose constitutional injury was too small, in terms of expected

monetary recovery, to create an incentive for attorneys to take the case under conventional fee

arrangements." *See Kassim v. City of Schenectady*, 415 F. 3d 246, 252 (2d Cir. 2005).

In this respect, we note in particular, the decided cases, including cases decided by this

Court, pay particular attention to the significance of the fee shifting statute in civil rights cases.

See e.g. *Hnot v. Willis Group Holdings Ltd.,* 2008 WL 1166309, No. 01-Civ.-6558 (GEL)

(S.D.N.Y. April 7, 2008) *and Chan v. Sung Yue Tung Corp.*, 2007 WL 1373118, No. 03-Civ.-

6048 (GEL) (S.D.N.Y. May 8, 2007) in which this Court recognized that civil rights cases are

time consuming and expensive to prosecute and that the relatively low damages typically

recovered make these cases unprofitable and creates a substantial disincentive to attorneys

willingness to prosecute those cases in the first place. *See Chan* at *7, noting that the fee

application customarily exceeds the award to the plaintiffs by a significant amount.

4

Under the standards articulated by the Supreme Court, the seven plaintiffs whom the jury found were retaliated against by Van Glahn are squarely within the definition of prevailing parties. As the *Hensley* Court observed "[t]he standard for making this threshold determination has been framed in various ways. A typical formulation is that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433 (internal citations omitted). The Supreme Court also noted that the prevailing party standard "is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable'" *Id.*

The plaintiffs in this action must be considered the prevailing party because the jury found in favor of the plaintiffs with regard to their most significant claim, that Captain Van Glahn violated their civil rights. *See Id.* Finding that Van Glahn had engaged in retaliatory acts against seven of the nine plaintiffs, the jury awarded compensatory damages.

**2.    <u>Counsel Should Be Awarded The Full Fees Sought on This Application</u>**

The fees requested on this application have been calculated in the manner accepted by the Supreme Court in *Hensley.* Counsel has multiplied the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433.[2] See also *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany and Albany County Elections,* 522 F.3d 182, (2d Cir. 2008), where the Second Circuit abandoned the "lodestar" method for determining attorneys' fees and directed district courts to produce instead a "presumptively reasonable fee" by first determining a reasonable hourly rate. *Id at* 189. "The

---

[2] Plaintiffs are also entitled to compensation for the preparation of this motion and any litigation related to this fee application which will be filed at a later date. *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183-84 (2d Cir. 1996).

focus of the district courts is no longer on calculating a reasonable *fee,* but rather on setting a reasonable hourly rate, taking account of all case-specific variables." *Id.*

### A.    Plaintiffs' Attorneys Expended A Reasonable Number Of Hours On This Litigation

The legal fees submitted by plaintiffs are reasonable. As stated by this Court, "hours reasonably expended are hours actually expended by counsel minus 'excessive, redundant, or otherwise unnecessary' hours." *Hnot* at *2. Further, "[i]n determining whether hours should be excluded, the inquiry is not based on what effort was necessary in hindsight, but rather on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir.1992)." Notwithstanding, that all of the time spent by counsel was spent in good faith in order to advance their plaintiffs' claims, and as such was reasonable, counsel has nonetheless reviewed their contemporaneous fee records and have excluded hours which they now consider to have been "excessive" or "redundant" billing. (*See* Hyman Decl.¶ 23 and Siegel Decl. ¶ 6)

Plaintiffs have also excluded fees associated with the depositions of Jose Martinez and Leon Guzman, preparation for the trial testimony of Jose Martinez and Leon Guzman and telephone and office conferences attended only by Jose Martinez and/or Leon Guzman. (*See* Hyman Decl. ¶ 31) In doing so, plaintiffs have excluded all of the hours which are not "inextricably intertwined" or "involve a common core of facts". *See Wiengarten v. Optima Communications Systems, Inc.* 544 F. Supp 2d 193, 196. As such, the hours submitted in this fee application are reasonable and should not be adjusted (S.D.N.Y. 2008).

Plaintiffs' counsels' billing was neither excessive nor inefficient. Counsel utilized cost-efficient billing practices to reduce legal fees. For instance, Ms. Nicotra, an associate, billed more than twice the hours of the two lead attorneys. Further, law students hired by counsel to

assist in document review and trial preparation worked over 600 hours at the very reasonable

billing rate of $25 an hour. (*See* Hyman Decl. ¶¶ 24)    *See Chan *6,* (legal assistants billed at

$50 an hour).  Since the firm took these measures to keep the cost of the litigation low, there

should be no reduction in fee based on staffing efficiency.  *See Rozell, infra* at 541 (reduction for

a disproportionate amount of time was billed by the more senior counsel relative to that billed by

more junior associates with lower hourly rates.)

**B.    The Hourly Rates Sought Compare With The
         Prevailing Market Rates In This District**

Plaintiffs' counsels' hourly billing rates for the purpose of this fee application are well

within the parameters of the prevailing market rates for attorneys practicing in the Southern

District.  For the purposes of this application plaintiffs' primary counsel is billing at the

following rates: Steve Hyman: $500, Norman Siegel: $450, Alan Sash: $350, Rachel Nicotra:

$225. (*See* Hyman Decl. ¶ 24)

The reasonable hourly rate is the rate that a "paying client is would be willing to pay."

*Hnot* at *2.  One way of establishing that a client would be willing to pay a certain rate is to

provide documentary evidence of what clients do pay.  Plaintiffs' counsel has annexed to their

declarations retainer agreements which establish the rates at which they are currently being

compensated by paying clients.  These rates have been lowered for the purposes of this fee

application.

The rates set forth in the application are also comparative to the rates "prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience, and

reputation." *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998).

The rates requested by plaintiffs' counsel are comparable to hourly rates awarded to other

civil rights attorneys in to the Southern District.  In *Vikhu v. City of New York,* 2009 WL

1851019, No. 06-CV-2095 (CPS) (E.D.N.Y. June 26, 2009) the Court conducted an analysis on

the Southern District precedent on rate awards:

> A review of precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time. *See, e.g., Rozell v. Ross-Holst,* 576 F.Supp.2d 527, 546 (S.D.N.Y.2008) (awarding $600 per hour for partners and counsel, $350 for senior associates, and $250 for junior associates in mid-size firm specializing in civil rights employment law); *Wise,* 2008 WL 482399 at *9-10 (awarding ECBA partner with 18 years of experience $425 per hour, ECBA associates with seven or eight years of experience $300 per hour, and ECBA associate with a total of four years of experience but only one year of civil rights experience $250 per hour); *Heng Chan v. Sung Yue Tung Corp.,* No. 03 Civ. 6048, 2007 WL 1373118, at *3-4 (S.D.N.Y. May 8, 2007) (awarding large-firm partner with 16 years of experience $450 per hour, non profit attorney with fifteen years of experience $400 per hour, large-firm associates with 6 years of experience $300 per hour, and large-firm associate with 2 years of experience $200 per hour).[3]

Plaintiffs' counsels' rates fall squarely between the ranges set forth in *Vikhu:* $250 to

$600 for partners, and $200 to $350 for associates. *Id.* In addition, in this case, lead counsel each

have established background and credentials in civil rights issues and litigation, over a more than

40-year period. As set forth more fully in the Hyman and Siegel declarations, both attorneys

have been involved in civil rights litigation since the beginning of their careers, more than 40

years ago. As set forth in Mr. Hyman's declaration and in his curriculum vitae, (Hyman Decl. Ex

"1"), Mr. Hyman has served as trial and appellate counsel in numerous major felony and

homicide cases, including a capital case under New York's previous death penalty statute; has

served as counsel in numerous cases involving military and selective service law; and numerous

civil liberties and civil rights cases, including employment discrimination law. Mr. Hyman is

also a member of the Board of Directors of the New York Civil Liberties Union ("NYCLU"),

and was President of the NYCLU from 1995 to 2002. In fact, as an experienced trial lawyer in

---

[3]  In *Chan* which was a case under the FLSA and New York State Labor Law charged by the hour what a large firm charges its corporate clients to be comparable with experienced civil rights attorneys.

New York City, Mr. Hyman's current rate of $550 is moderate in the marketplace, as evidenced by the recent cases on the subject. However, for this case, because of the nature of this case, he has reduced his hourly rate to $500 per hour.

The other lead counsel, Norman Siegel, is a well known and eminently respected civil rights litigator whose career includes 15 years as Executive Director of the New York Civil Liberties Union ("NYCLU"). And from February 2002 until present, he has been a sole practitioner concentrating in the practice of civil rights, civil liberties and constitutional law. For the past four years at the Winter Conference of the Federal Bar Council, he has been a presenter on the Annual "Supreme Court Review" Continuing Legal Education panel. (See Biographical Statement, Exhibit "A" to Siegel Declaration.). Mr. Siegel is billing in this case $450 per hour. (See Exhibit "B" to Siegel Declaration indicating his billing at $500 per hour.) Mr. Siegel and Mr. Hyman have worked together on a variety of Civil Rights cases and have been co-counsel in numerous civil rights cases against New York City, including cases against the Department of Corrections (representing three plaintiff employees who each successfully sued and settled claims for violations of their Civil Rights), and the New York City Police Department (in which each of our clients successfully sued and settled claims for violations of their Civil Rights), as well as other institutions such as Brooklyn College and the NYC Parks Department and the Metropolitan Transit Authority ("MTA"). Other actions against New York City include representation of the plaintiffs in two "Critical Mass" bicycle rider cases, *Bray v. City of New York*, 356 F.Supp.2d 277, S.D.N.Y., December 23, 2004 (NO. 04 CIV.8255 WHP) and *City of New York v. Times' Up, Inc.*, 11 Misc.3d 1052(A), 814 N.Y.S.2d 890, (Table, Text in WESTLAW), Unreported Disposition, 2006 WL 346491, 2006 N.Y. Slip Op. 50189(U), N.Y.

Sup., February 14, 2006 (NO. 400891/05). Many of these cases were successfully settled, including the payment of legal fees by the City.

Alan Sash is an experienced trial attorney and a partner at the firm. He has ten years experience in litigation. His usual billing rate is $480 an hour. He is being billed at the very reasonable rate of $350 an hour. His litigation experience was essential for the successful prosecution of plaintiffs' claims. (*See* Hyman Decl. ¶¶ 24)  He has previously tried jury and bench cases. His rate is commensurate with those charged by partners appearing in similar cases in the Southern District. *See, Wise, supra, Torres v. City of New York*, No. 07 Civ. 3473, 2008 U.S. Dist. LEXIS 11027, *4 (holding in excessive force case that "[t]he rate of $350 is not unreasonable for a lawyer of ten years experience.").

Rachel Nicotra is a third-year associate, who has worked almost exclusively on employment discrimination, has a current billing rate is $275 an hour. In this case she is being billed at a rate of $225. This hourly rate is in line with the prevailing rates in the Southern District. *See Rozell at 546,* (awarding $250 an hour for junior associates); *See Wise, supra,* (awarding fourth-year associate limited civil rights experience $250); *See Chan, supra* (awarding $200 to a second-year associate).

### (i)      Current And Historic Rates

The plaintiffs retained Norman Siegel, Esq. and this firm in May of 2004. Since that time, counsels' hourly rates have increased. (*See* Hyman Decl. ¶ 21 and Siegel Decl. ¶ 4) Where litigation lasts several years, and the prevailing party did not cause the delay, that party is entitled to their current, rather than historic, billing rates. *See Gierlinger v Gleason,* 160 F.3d 858, 882, (2d Cir. 1998) citing *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 284 (1989): "Clearly, compensation received several years after the services were rendered-as it frequently is in

complex civil rights litigation-is not equivalent to the same dollar amount received reasonably

promptly as the legal services are performed, as would normally be the case with private billings.

We agree, therefore, that an appropriate adjustment for delay in payment-whether by the

application of current rather than historic hourly rates or otherwise-is within the contemplation of

the statute" (*holding*: "The court should instead have set the rate of compensation for Pottle's

work by reference to current rates.")

### (ii)    Case Specific Variables

When considering whether the requested rates are reasonable district courts have been

instructed to bear in mind the "case specific variables" outlined in *Arbor Hill* and referred to as

the "Johnson factors." As set forth by this Court in *Hnot,* these factors include, "(1) the time and

labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to

perform the legal service properly; (4) the preclusion of employment by the attorney due to

acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or

contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount

involved in the case and the results obtained; (9) the experience, reputation, and ability of the

attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional

relationship with the client; and (12) awards in similar cases." *Hnot* at *2.

A consideration of these factors justifies the rates that plaintiffs' counsel has set forth in

their fee application.

Time and labor required: The complaint in this case was filed nearly four years ago on

behalf of nine plaintiffs. At the time all of the plaintiffs were employed by the NYPD. Though

the plaintiffs shared common claims against Van Glahn there were distinctive features in each

plaintiff's allegations that had to be established for the successful prosecution of the case. In this

way, it was tantamount to bringing nine separate claims each requiring its own time-consuming discovery.   The parties conducted 24 depositions and exchanged thousands of pages of documents.  The defendants produced voluminous data in hard copy format.  The result is over 30 boxes of documents, of which the majority are daily roll-call sheets.  The review and organization of these documents was a massive undertaking.   (*See* Hyman Decl. ¶¶ 7, 8, 18)

Novelty and difficulty of the questions:  The number of plaintiffs and the scope of the litigation made this a difficult case.  The organization of the case during discovery and the trial were particularly difficult.  (*See* Hyman Decl. ¶ 27) Further, there were novel questions of law involving adverse employment actions that required counsels' attention during the trial.  The outcome of this case has clarified, and perhaps expanded, the scope of retaliatory actions which can be considered adverse under Title VII and §1981.  In cases involving multiple plaintiffs and novel legal issues, courts have awarded comparable legal fees. *See Chan, supra, see also Rozell, supra* (where Court reduced fees noting that case only involved one plaintiff and no novel issues of law.)

The level of skill required to perform the legal service properly: The litigation of a multi-year, multi-plaintiff employment discrimination requires counsel that is experienced in employment discrimination and complex litigation.  In *Rozell,* the Court recognized that cases involving "multiple parties, class allegations, unique claims… would tend to require counsel to charge premium rates in order to take the case on." 576 F.Supp.2d at 547.  Lead counsel in this case, as set forth above, and in their respective declarations have over forty years of experience in litigation and civil rights law.

The preclusion of employment by the attorney due to acceptance of the case: At crucial stages of this litigation, the close of fact discovery, trial preparation on two occasions, and the

trial counsels' hours were exclusively devoted to this litigation. We were unable to work on commercial matters while preparing for and on trial. (*See* Hyman Decl. ¶ 28)

The attorney's customary hourly rate: Counsel has submitted documentation establishing that their current billing is: $550 and hour for Steven Hyman, $500 for Norman Siegel, $480 for Alan Sash, and $275 for Rachel Nicotra. Counsel has also provided the customary billing rates for other members of the firm. (*See* Hyman Decl. ¶ 25) Where plaintiffs are billing at rates lower than their current rates, and have established that the current rates are reasonable, the Court should not further reduce the hourly rates. *Chan, supra.*

The time limitations imposed by the client or the circumstances: This trial was initially scheduled for a March 2nd start date. The trial was adjourned in February to June 15th. In May the trial date was moved up by two weeks to June 1st. These scheduling changes added certain time constraints and necessitated staffing adjustments. (*See* Hyman Decl. ¶ 28)

The amount involved in the case and the results obtained: Plaintiffs have achieved the core objective of their litigation: vindication of their civil rights and a finding that Van Glahn had unlawfully changed their evaluations and placed them in performance monitoring. The hours expended and the legal fees accrued are unquestionably reasonable in light of the fact that seven individuals succeeded in proving that they were retaliated against by the NYPD for exercising their civil rights. The Court has awarded legal fees in amounts comparable to those requested in this claim for cases involving only one plaintiff. *See, Vikhu, supra.*

The experience, reputation, and ability of the attorneys: As set forth above and in detail in Counsels' declarations, plaintiffs' counsel is highly esteemed and experienced in the area of civil rights law.

The "undesirability" of the case:  This case is "undesirable" in that the legal fees and costs incurred far exceed the monetary damages awarded to the plaintiffs.  As stated in counsels' closing, the plaintiffs' case is about something more than just money.  Counsel knew at the time that they were retained that this case did not have significant back pay or front pay damages. Counsel took the case because they believed the vindication of plaintiffs' rights was important. (*See* Siegel Decl. ¶ 5) In the absence of this fee-shifting statute the unprofitability of this case would have been a significant disincentive. *See, supra, Hnot.*

The nature and length of the professional relationship with the client:  Plaintiffs retained counsel to address the unique circumstances related to Captain Van Glahn and adverse actions suffered at the NYPD.  The representation of the plaintiffs in other matters does not seem likely.

Awards in similar cases:  The Southern District has awarded attorneys' fees and costs in amounts equal to and greater than those requested in this case. *See, Chan, supra* at *10.

## C.    **Plaintiffs' Presumptively Reasonable Fee**

Plaintiffs have calculated their presumptively reasonable fee by multiplying their reasonable hourly rates by the reasonable hours expended.  "Multiplying the reasonable hourly rate and the reasonable hours expended returns the "presumptively reasonable fee," which is not normally adjusted thereafter, since the "reasonable hourly rate" and the "hours reasonably expended" already incorporate the essential information needed to calculate a reasonable fee." *Hnot, supra.*

Plaintiffs are requesting fees in the amount of $1,145,971.60 as itemized below:

| Name | Position | Rate | Hours | Total |
|------|----------|------|-------|-------|
| Steven J. Hyman | Lead attorney/Partner | $500.00 | 688.75 | $344,375.00 |
| Alan E. Sash | Partner | $350.00 | 393.30 | $137,655.00 |
| Rachel Nicotra | Associate | $225.00 | 1403.95 | $315,888.75 |

| Deborah Berkman | Associate | $200.00 | 65.75 | $13,150.00 |
|---|---|---|---|---|
| Deanna Waldron | Partner | $360.00 | 80.00 | $28,800.00 |
| Paul H. Levinson | Partner | $425.00 | 18.25 | $7,756.25 |
| Janet C. Neschis | Partner | $425.00 | 83.40 | $35,445.00 |
| Lindsay R. Pfeffer | Associate | $185.00 | 178.61 | $33,042.85 |
| William Kang | Paralegal | $100.00 | 41.00 | $4,100.00 |
| Brendan N. Charney | Paralegal | $100.00 | 571.95 | $57,195.00 |
| Law Students | Legal Intern | $25.00 | 611.75 | $15,293.75 |
| **M&S SUBTOTAL** | | | **4136.71** | **$992,701.60** |
| Norman Siegel | Lead attorney/solo practitioner | $450.00 | 340.60 | $153,270.00 |
| **FINAL TOTAL** | | | **4477.31** | **$1,145,971.60** |

The above listed fees are reasonable. The "most critical factor" in determining whether the requested attorneys' fees are reasonable is the "degree of success obtained." *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S. Ct. 566, 121 L.Ed.2d 494 (1992). "A district court's assessment of the 'degree of success' achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims. Both 'the quantity and quality of relief obtained,' as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved. Indeed, this comparison 'promotes the court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.' " *Barfield* at 152 (internal citations removed).

A consideration of the circumstances of this case reveals that plaintiffs succeeded in precisely what they sought to achieve: to vindicate plaintiffs' rights with regard to the discriminatory and retaliatory actions taken against the plaintiffs by Captain Van Glahn. This has always been the main goal of plaintiffs' litigation as evidenced by the fact that the firm was retained to specifically address mistreatment by Captain Van Glahn and by the fact that the Complaint is comprised entirely of actions attributable, in large part, to Captain Van Glahn.

Since plaintiffs obtained relief on the primary goal of their litigation there should be no reduction in fees.  In this case the jury awarded plaintiffs damages for the first two claims set forth in their complaint: negative evaluations and performance monitoring.[4]

**D.    Plaintiffs' Presumptively Reasonable Fee Should Not Be Adjusted**

As stated above, plaintiffs have already excluded, where feasible, hours expended on issues that were not "inextricably intertwined" to successful claims; hours expended exclusively on Plaintiffs Martinez and Guzman have been excluded.

Plaintiffs' unsuccessful claims are 'inextricably intertwined' and 'involve a common core of facts or [are] based on related legal theories.'  *See Grant v. Martinet,* 973 F.2d 96, 101 (2d Cir. 1992).  "This Circuit holds that attorney's fees may be awarded for unsuccessful claims, as well as for successful ones, when they are 'inextricably intertwined' and 'involve a common core of facts or [are] based on related legal theories'." *Parish v.* Sollecito, 280 F.Supp.2d 145 (S.D.N.Y. 2003).

There should be no reduction of plaintiffs' presumably reasonable fee as set forth above based on the fact that plaintiffs did not succeed in each of their individual claims.

(i)    **Inspector Donna Jones**

The plaintiffs' fees should not be reduced due to the jury's finding that Inspector Donna Jones did not unlawfully enroll plaintiffs into performance monitoring in 2004 and 2005.  *See Lyons* v. *Cunningham*, 583 F.Supp. 1147 (finding that a jury determination that seven out of nine

---

[4] Plaintiffs should not be penalized for lack of success on issues that were included in the Complaint but not put before the jury. *See Lyons v. Cunningham.* "That plaintiffs' counsel withdrew the negligence cause of action is not important. For whatever their reasons, plaintiffs' decision materially advances the presentation of this case to the jury. It made it easier for the litigants and the Court to present and explain the relevant issues to the jury. Thus, the Court finds it inequitable to penalize plaintiffs' attorney for exercising his judgment in a manner which furthered the interests of all parties. Indeed, were the Court to accept defendants' contentions in this area, a party would be forced to litigate all nonfrivolous claims to a verdict, a result inconsistent with *Hensley, supra,* and the Court's interest in the prompt and efficient disposition of its cases". *Lyons v. Cunningham,* 583 F.Supp. 1147, 1152-53 (S.D.N.Y. 1983).

defendants were not liable in a §1983 claim did not lead to a reduction in fees where plaintiff had a good faith basis for bringing the claims against the defendants).  When plaintiffs added Donna Jones as a defendant, and named in her official capacity, they had a good faith basis for doing so: she was the head of the performance monitoring department and responsible for their enrollment into the program.  The plaintiffs were also motivated to add Donna Jones as a defendant in this case based on statements that she made which she recounted during trial: 'And I said all you African Americans who come before me and have no activity are busy blaming Captain Van Glahn. (See Trial Trans. p. 2469).

Further, it cannot be argued that the discovery relating to claims against Inspector Jones were unreasonable.  First, all were essential in establishing plaintiffs' claims that Van Glahn unlawfully caused them to be placed in performance monitoring.  Second, as head of the performance monitoring program all of the information obtained from Donna Jones during her deposition and in the trial was essential in establishing the significance of the performance monitoring program and its adverse effect on an officers' career.

Since plaintiffs succeeded in establishing that they were unlawfully placed in performance monitoring in 2004 and 2005 by Ernest Van Glahn, the fact that they did not find liability for Donna Jones cannot disrupt the calculation of the presumptively reasonable fees since both involved the same common core of facts.

### (ii)    Discrimination Claims

The fact that the jury did not find in favor of the plaintiffs' discrimination claims does not necessitate a reduction in fees because plaintiffs' discrimination and retaliation claims were inextricably intertwined and involved the same common core of facts.

17

First, all of plaintiffs' discrimination claims against Van Glahn were coupled with an allegation of retaliation. Thus, plaintiffs' allegation that Van Glahn had discriminated and retaliated against them involved the same core of facts and underlying analysis: Van Glahn's motivation for causing the plaintiffs to fail their 2004 evaluations and causing them to be placed in performance monitoring.

The Second Circuit has also held that discrimination and retaliation are sufficiently related so that the failure of a discrimination claim, where the plaintiff has succeeded on the retaliation claim, is not, in and of itself, sufficient grounds for the reduction of legal fees. *See, Quarantino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999) (*en banc*). *See also Gonzalez v. Bratton,* 147 F. Supp.2d 180, 212 (D.S.N.Y. 2001) (where plaintiff succeeded on the retaliation claim no reduction in the lodestar amount where discrimination claim and hostile environment claim not sustained.)

### (iii)    Denial of overtime

Although plaintiffs were unsuccessful in establishing that they were unlawfully denied overtime in 2004 the hours expended pursuing that claim are reasonable and are inextricably intertwined with plaintiffs' successful retaliation claims against Captain Van Glahn.

In order to sustain their retaliation claims against Van Glahn, plaintiffs first had to establish that they had a good-faith belief that they were being discriminated against when they filed their EEOC complaints in 2003. *See Parris, supra,* 280 F. Supp. 2d 145, 172. During the trial the defendants attacked plaintiffs' good faith basis for filing those complaints. Plaintiffs' 2003 EEOC submissions contained allegations that they were discriminatorily being denied overtime. Thus plaintiffs had to offer evidence relating to the denial of overtime in 2003 to sustain their later claims against Van Glahn alleging retaliation. Evidence that the denial of

overtime continued into 2004 further served to buttress plaintiffs' good-faith basis for filing.

Plaintiffs' experts' testimony further supported the plaintiffs' good faith belief that they were

discriminated against by showing that they did in fact experience a significant decline in

overtime earnings.

Thus the overtime claim, which comprised the initial discrimination claim is not

separable from the successful retaliation claim and does not necessitate the reduction in fees.  In

*Parrish* the court held:

> The Court finds that the facts underlying Parrish's sexual harassment claim
> were sufficiently related to the facts underlying her retaliation claim to justify
> an award of fees for her attorneys' work on both these claims. This finding is
> underscored by the legal requirement that Parrish assert that she was subjected
> to discriminatory conduct by Defendants-and that her complaints concerning
> this alleged incident were the trigger for retaliation-in order to recover on her
> retaliation claim: "A plaintiff may prevail on a claim for retaliation even when
> the underlying conduct complained of was not in fact unlawful 'so long as he
> can establish that he possessed a good faith, reasonable belief that the
> underlying challenged actions of the employer violated [the] law…. Thus, the
> Court finds that Parrish's sexual harassment and retaliation claims are
> inextricably bound; and therefore, Parrish's attorneys should receive fees for
> work done in preparation of both of these claims. *Id.* At 170.

Furthermore, the denial of overtime was but one aspect of the overall mistreatment Van

Glahn subjected the plaintiffs to during his tenure at Transit District 4.  To parse, and exclude,

hours expended in discovery on the issue of overtime is not feasible or necessary.

Finally, the bulk of discovery expenses relating to plaintiffs' claim of denied overtime

involved the creation of an expert report which was created for the purpose of settlement and

good faith the costs of which the defendants' should be held entirely responsible for due to the

discovery violations as discussed in detail below.

19

(iv)    **Jose Martinez and Leon Guzman**

The jury found that Van Glahn retaliated against all of the plaintiffs, except Plaintiffs Martinez and Guzman, by causing them to fail their 2004 evaluations and by placing them in performance monitoring in 2004 and 2005. These claims were not available for Plaintiffs Martinez and Guzman. Plaintiff Martinez did not file an EEOC complaint against Van Glahn in December 2003 and was placed in performance monitoring prior to actionable period, in 2003. Plaintiff Guzman passed his 2004 evaluation and was also placed in performance monitoring in 2003. Since the issues upon which the jury found Van Glahn liable were not available for Plaintiffs Martinez and Guzman, they were unable to recover damages.

Plaintiffs' presumably reasonable fee should not be reduced because Plaintiffs Martinez and Guzman did not prevail since their claims involved a common core of facts. The discovery conducted on behalf of Guzman and Martinez was the same as the discovery conducted on behalf of the plaintiffs who succeeded. No additional depositions were conducted to establish their claims, nor were any actions taken during discovery for their exclusive benefit. Plaintiffs Martinez and Guzman also added valuable testimony as fact witnesses at trial that benefited the successful plaintiffs. The hours expended on the representation of Plaintiffs Martinez and Guzman were reasonable.

In *Hnot,* this Court held that the time spent on a plaintiff who withdrew her claim was compensable: "The question is not whether a claim is ultimately successful, but whether 'at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.' *Grant,* 973 F.2d at 99. Plaintiffs have offered sufficient proof that it was reasonable, because Mahon was an employee of Willis, who had her own colorable claims, and whose testimony could help buttress the claims of other class members alleging sex

discrimination.  Thus, time spent by Warshaw on Mahon-related issues prior to May 10, 2004, is compensable." *Hnot* at *4.

Thus, there should be no reduction in fees due to the fact that Plaintiffs' Martinez and Guzman did not prevail.

(v)    **Placement of plaintiffs into performance monitoring in after 2005**

The fact that Plaintiffs did not prevail on their claims that they were unlawfully placed into performance monitoring, or a higher level of monitoring, between 2006-2007, should not result in a fee reduction since the discovery conducted in furtherance of these claims was essential to establish the negative impact of the program and the lasting effects of Van Glahn's unlawful placement of the plaintiffs into the program.

Thus the depositions conducted during discovery and the testimony elicited during trial regarding the later placement of plaintiffs into performance monitoring demonstrated the effect of the initial placement.  Sgt. Vitale testified that he was instructed to include reference to performance monitoring in the evaluations of the plaintiffs.  The placement letters of Plaintiffs Robinson and Saintilus into performance monitoring in 2008 referred to their earlier placement.

Further, as stated in *Grant v. Martinez,* the determination as to whether hours should be excluded is not based in hindsight on what effort was necessary in hindsight but "rather on whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir.1992).

Counsel was not acting unreasonably in alleging that plaintiffs were subjected to later acts of retaliation.  The fact that plaintiffs succeeded in their retaliation claim against Van Glahn justifies counsels' pursuing later claims of retaliation.  Sgt. Vitale's testimony as to the fact that only the plaintiffs' evaluations were changed, and that he was not ordered to indicate that Officer

Smith was in performance monitoring in his evaluation also speaks to the reasonableness of plaintiffs bringing the claims.

Further, later placement in performance monitoring involves the same common core of facts as plaintiffs' successful claim against Van Glahn. Had Van Glahn not unlawfully caused the plaintiffs to be placed into monitoring in 2004 and 2005 they would arguably not have been increased to a higher level of monitoring or enrolled again into monitoring between 2006 and 2008. This is the subject, in part, of our motion for post trial injunctive relief.

**3.** **Plaintiffs' Attorneys' Fees Are Fully Compensable Under Section 1988**

It has long been established that attorneys' fees do not need to be proportional to the amount of damages recovered. *See Quarantino v. Tiffany Co.,* 166 F.3d 422 (2d Cir. 1999) *(en banc)*. In fact, as recognized by this Court in *Hnot* at *7, §1988 is particularly well-suited for these occasions:

> "Although the award is greater than the damages actually recovered by plaintiffs, that fact illustrates the wisdom of a fee-shifting statute that accounts for and rewards pro bono representation, because unprofitability is a significant disincentive for most attorneys to take cases like this one. The Supreme Court, affirming an award of attorneys' fees that substantially exceeded plaintiffs' recovery, has emphasized that "a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." *City of Riverside v. Rivera,* 477 U.S. 561, 574 (1986)."

This was particularly clear in *Vikhu,* where the plaintiff received $20,000 in damages and attorneys' fees were $671,056.80. *See Vikhu v. City of New York,* 2009 WL 1851019, No. 06-CV-2095.

4.    **Plaintiffs Are Entitled To Costs**

Section 1988 provides "in awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of §1981 or §1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee." 42 U.S.C.A. § 1988(c).

This Court has held, "In addition to compensation for hours reasonably expended, awards of attorney's fees in civil rights suits under fee-shifting statutes ... normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Hnot* *2 (internal citations omitted).

Plaintiffs' expenses are reasonable considering the length of this litigation and the number of the plaintiffs involved.  Plaintiffs are requesting costs in the amount of $132,937 as itemized below:

| Category | Amount |
|---|---|
| Photocopying and printing | 18,058.30 |
| Filing fee | 250 |
| Messenger fees | 242 |
| Fed ex | 103.08 |
| Facsimile | 281.6 |
| Process server | 113 |
| Tape duplication | 842.75 |
| Westlaw research | 7595.24 |
| Court reporter | 24,042 |
| Staff overtime | 1773.17 |
| Expert fees: 2008 report (get date) | 50,259 |
| Court Transcripts | 17,116 |
| Travel charges | 3,235 |
| Trial materials (Discovery) | 9027.21 |
|  |  |
| Total expenses: | **132,937.02** |

(i)    **Expert Fees**

As the prevailing party of a Title VII and §1981 claim, plaintiffs are entitled to expert fees.  42 U.S.C. § 2000e-5(k); 42 U.S.C. §1988.  The plaintiffs' experts, CFES, produced two

reports related to economic damages resulting from the denial of overtime. These reports were created in the furtherance of settlement and proof of plaintiffs' good faith. As such, plaintiffs are entitled to the fees associated with the reports. *Sugarman v. Village of Chester*, 213 F.Supp.2d 304, 311–12 (S.D.N.Y. 2002)(holding that attorneys were entitled to reimbursement for their reasonable settlement efforts under §1988).

However, even in the absence of the fee shifting provisions of §1988, this cost should nevertheless be borne by the defendants because they withheld requested electronic data necessary for plaintiffs' expert to complete her report in violation of Rule 37 of the Federal Rules of Civil Procedure. In *TSE v. UBS Financial Serv.*, 568 F.Supp.2d 274, 321 (S.D.N.Y. 2008), this Court stated:

> Fed. R. Civ. P. 37(c)(1) provides that the court 'may impose' appropriate sanctions, including 'reasonable expenses' and 'attorney's fees' for a party's failure to 'disclose information required by [Fed. R. Civ. P. 26(a) or (e)' without 'substantial[ ]' justification. Rule 37 'places the burden on the disobedient party to avoid expenses [including attorneys' fees] by showing that his failure is justified or that special circumstances make an award of expenses unjust.' Courts in this circuit have often awarded attorneys' fees to sanction a partner who disregards her discovery obligations.

[Citations omitted]. This District has awarded attorneys' fees for discovery abuse under Rule 37 (c)(1) even where it held that the party negligently, rather than intentionally, withheld discovery from the opposing party. *Monaghan v. SZS 33 Assocs., L.P.*, 154 F.R.D. 78 (S.D.N.Y. 1994). In fact, "[s]uch an award is considered the mildest form of sanction under Rule 37."

As set forth plaintiffs' letter to the Court, dated January 6, 2009, Plaintiffs previously raised the issue of the defendant's discovery abuse with the Court, and requested that sanctions be imposed against the City in an amount equal to plaintiffs' expert fees and associated attorneys' fees. (Hyman Decl. Ex "6") Plaintiffs were left with no other option than to have their expert produce her expert report and approximate her calculations of economic damages without data

which plaintiffs had repeatedly requested from the defendant. After defendant finally produced the data to plaintiffs, plaintiffs were then forced to incur further costs in having their expert produce a supplemental report to include the belatedly produced data. In accordance with the law of this Circuit, plaintiffs are entitled both to sanctions on account of the defendant's wrongful discovery conduct, as well as the attorneys fees incurred from plaintiffs' counsel's efforts to obtain the defendant's compliance with its requests. *See Attard v. City of New York*, No. 05 CV 2129, 2008 WL 1991107, at *5 (E.D.N.Y. May 5, 2008) (holding that the defendant was responsible for the cost of the initial expert report and subsequent report, which was made necessary by the deficiencies in the defendant's data production); *Fleming v. City of New York*, No. 01 Civ. 8885, 2006 WL 2322981 (S.D.N.Y. Aug. 9, 2006) (holding that "[a] party may be sanctioned for its 'failure to produce documents necessary to facilitate the expert's review, particularly after multiple requests,' especially where 'extensive analysis of . . . statistical evidence' is required," and also holding City accountable for its failure to supplement its electronic data set with formatting specifications required by the plaintiff's expert to make the data reasonably usable).

It should also be noted that one of cases cited above involve discovery violations by the Corporation Counsel and specifically name Assistant Corporation Counsel Cindy Switzer who withheld the economic documents in this matter. *Fleming*, 2006 WL 2322891, at *2.

Plaintiffs are therefore entitled to expert fees and the cost associated with the preparation of the experts' reports on August 28, 2008 and February 5, 2009 under the Rule 37(c)(1) of the Federal Rules of Civil Procedure, since defendants withheld requested electronic data that was necessary for the completion of the expert report.

## CONCLUSION

For all of the foregoing reasons, and the reasons set forth in the declarations of Steven J. Hyman and Norman Siegel, we respectfully request that pursuant to 42 U.S.C. 1988 the application for fees and costs incurred on behalf of the plaintiffs, as prevailing parties, be granted in its entirety.

Dated: New York, New York
      July 16, 2009

                            MCLAUGHLIN & STERN, LLP
                            Attorneys for Plaintiffs
                            260 Madison Avenue
                            New York, New York 10017
                            (212) 448-1100

                            Steven J. Hyman (SJH 2097)
                            Alan Sash (AS8804)
                            Rachel Nicotra (RN 6770)

                            NORMAN SIEGEL(NS 6850)
                            Attorney for Plaintiffs
                            260 Madison Avenue – 18th Floor
                            New York, NY 10016
                            (212) 532-7586