UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                                                    :
JACKIE ROBINSON, EMMANUEL BOWSER,                   :
LEON GUZMAN, SCOTT HARRISON,                        :
FREDERICK INMAN, JOSE MARTINEZ,                     :
CHARLES PANTON, MICHAEL RYAN                        :
and RONALD SAINTILUS,                               :
                                                    :
                 Plaintiffs,                        :
                                                    :            05 Civ. 9545 (GEL)
        -against-                                   :
                                                    :         **OPINION AND ORDER**
THE CITY OF NEW YORK, DONNA JONES,                  :
DEPUTY INSPECTOR OF THE NEW YORK                    :
CITY POLICE DEPARTMENT, and ERNEST                  :
VAN GLAHN,                                          :
                                                    :
                 Defendants.                        :
                                                    :
--------------------------------------------------------------x

Steven Hyman, Alan Sash, and Rachel Nicotra,
McLaughlin & Stern LLP, New York, NY, and
Norman Siegel, New York, NY for plaintiffs.

Donna Canfield and Kimberly Conway, New York,
NY, for defendants.


GERARD E. LYNCH, Circuit Judge:[1]

        Plaintiffs petition pursuant to 42 U.S.C. § 1988 for an award of attorneys' fees and

expenses in connection with an employment discrimination action alleging race discrimination

and retaliation that resulted in a fourteen-day trial, after which the jury returned a verdict in favor

of seven of the nine plaintiffs with respect to certain of their claims of retaliation, and in favor of

the defendants with respect to the balance of plaintiffs' claims.  Defendants challenge almost

--------

[1] The Honorable Gerard E. Lynch, United States Court of Appeals for the Second Circuit,
sitting by designation.

every aspect of plaintiffs' application, arguing that the fees are excessive on a number of

grounds, both in the rates charged and the hours expended, and that plaintiffs' request for costs

should be denied or substantially reduced because they are excessive or unwarranted.

Defendants further argue that the fee award should be reduced both because the claims on which

plaintiffs succeeded were unrelated to their other claims, and because the overall degree of

success was limited.  For the following reasons, plaintiffs' motion will be granted to the extent

set forth below.

## BACKGROUND

The plaintiffs are eight active police officers and one retired officer who worked during

the relevant time period, in Transit District 4 of the New York City Police Department.  In 2005,

the plaintiffs brought suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e, et seq., as amended, 42 U.S.C. §§ 1981 and 1983, and the laws of New York, claiming

that the defendants discriminated against them on the basis of their race and color and then

retaliated against them after they filed charges of discrimination with the United States Equal

Employment Opportunity Commission ("EEOC") and complained internally to the NYPD's

Office of Equal Employment Opportunity ("OEEO").

Specifically, plaintiffs claimed that defendant Ernest Van Glahn, the former captain of

Transit District 4, discriminated and retaliated against them by denying them voluntary overtime

and paid detail assignments, causing them to fail performance evaluations and to be placed into

Performance Monitoring, and denying them favorable posts and assignments, among other

allegedly adverse actions.  Plaintiffs also claimed that defendant Deputy Inspector Donna Jones,

then head of the Employee Management Division and the Performance Monitoring Program,

2

condoned Van Glahn's discriminatory and retaliatory placement of placement of plaintiffs into Performance Monitoring and failed to take any independent action to ensure that Van Glahn's placement of the plaintiffs into the program was objectively justifiable.[2]  Plaintiffs also alleged that the racially discriminatory and retaliatory conduct – including the denial of voluntary overtime and paid detail assignments as well as the adverse performance evaluations and discipline – continued after Van Glahn left the command in November of 2004, under a series of commanding officers, until the date of trial.  Consistent with these allegations, plaintiffs contended that between 2003 and the date of trial, black and Hispanic officers were assigned less desirable posts, given less overtime, and evaluated less favorably than white officers in the command.

From 2005 through 2008, the parties engaged in a protracted and contentious period of discovery, which required numerous court conferences and resulted in several discovery orders. The trial began on June 1, 2009.  On June 25, 2009, the jury returned a verdict for the plaintiffs only with respect to their claims of retaliation by Van Glahn.  The jury returned a verdict in favor of the defendants as to plaintiffs' remaining claims of race discrimination, denial of overtime, and all claims following Van Glahn's departure from the command.  The jury also returned a verdict in favor of Donna Jones on all of the plaintiffs' claims against her.  On July 15, 2009, plaintiffs moved for permanent injunctive relief consistent with the jury's verdict, which the Court granted on August 11, 2009.

---

[2] Plaintiffs also brought claims against Neldra Zeigler, Deputy Commissioner of Equal Employment Opportunity of the New York City Police Department, Michael Scagnelli, Chief of the Transportation Bureau of the New York City Police Department, and Raymond Kelly, Police Commissioner.  These claims were withdrawn with prejudice prior to, or during, trial.

Plaintiffs have been represented throughout this litigation by the law firm McLaughlin & Stern, and by Norman Siegel.  The main fee application seeks $963,821.60 in fees for McLaughlin & Stern and $153,270 for Siegel, and costs in the amount of $131,019.88.[3]  In addition, plaintiffs seek attorneys' fees in the amount of $101,412 for McLaughlin & Stern and $7,537.50 for Siegel and costs in the amount of $1,880.07, in connection with the preparation of plaintiffs' fee application and the motion for injunctive relief.  In total, plaintiffs request $1,226,041.10 in attorneys' fees and $132,899.95 in costs, totaling $1,358,941.05.  The petition covers work done through August 17, 2009.

## DISCUSSION

**I.    Attorneys' fees**

    A.    Legal Standard

In a civil rights case, a court may, in its discretion, award a "reasonable attorney's fee" to a "prevailing party."  42 U.S.C. § 1988(b); see also Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) ("[T]he district court has wide discretion in determining the amount of an attorney's fee award").  A "prevailing party" is one who "succeeds on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit."  Bridges v. Eastman Kodak Co., 102 F.3d 56, 58 (2d Cir. 1996).  Here, there is no dispute that plaintiffs are prevailing parties because they won a verdict on some of their retaliation claims and received $235,000 in damages.  Thus, the plaintiffs realized some of the benefit they sought in bringing suit.  It

---

[3] Plaintiffs' original application, filed on July 16, 2009, sought attorneys' fees totaling $992,701 for McLaughlin & Stern and $153,270 for Siegel, and $132,937 in costs.  After the defendants submitted their opposition, plaintiffs' counsel revised their application by deleting or reducing certain entries.

remains, therefore, only to determine how much of a fee is "reasonable."

A "presumptively reasonable" fee can be calculated by "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).[4] The reasonable hourly rate reflects what a paying client would be willing to pay, and the hours "reasonably expended" are those actually expended by counsel minus "excessive, redundant, or otherwise unnecessary" hours. Id. at 434; see Arbor Hill Citizens Neighborhood Ass'n v. County of Albany ("Arbor Hill II"), 522 F.3d 182, 183 (2d Cir. 2008) (substituting the terminology "presumptively reasonable fee" for the older "lodestar" terminology, although the methodology of calculating the fee remains substantially the same).

Following the determination of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of plaintiff's success in the litigation. See Hensley, 461 U.S. at 434 & n. 9. While work on ultimately unsuccessful claims is compensable, so long as the "plaintiff's unsuccessful claims are not 'wholly unrelated' to the plaintiff's successful claims," Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994), quoting Grant, 973 F.2d at 101, a downward adjustment may nevertheless be appropriate when plaintiff "succeeded on only some of his claims for relief," Hensley, 461 U.S. at 434. The Court need not, however, "become enmeshed in a meticulous analysis of every detailed facet of the professional representation" in crafting a

---

[4] Although many of the cases cited herein deal with attorneys' fees awarded in cases brought pursuant to Title VII, § 2000e-5(k), attorneys' fees awarded pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, follow similar standards and, thus, cases decided under Title VII are authoritative in the context of § 1988. See Bridges, 102 F.3d at 58, n. 1 (internal quotations and citations omitted); see also N.A.A.C.P. v. Town of East Haven, 259 F.3d 113, 117, n. 5 (2d Cir. 2001) (relying on precedents involving attorneys' fees without regard to whether they involved Title VII or some other federal statute).

fee award.  Seigal v. Merrick, 619 F.2d 160, 164 n. 8 (2d Cir. 1980).  As the Supreme Court has indicated, "a request for attorney's fees should not result in a second major litigation."  Hensley, 461 U.S. at 437.  The district court is afforded broad discretion in determining a reasonable fee award based on the circumstances in the case, and the burden is on the fee applicant to submit evidence to support the number of hours expended and the rates claimed.  See id.

      B.     Plaintiffs' Petition

Plaintiffs have submitted documentation in support of their petition for fees and expenses.  Specifically, McLaughlin & Stern has provided records itemizing the hours spent on the litigation by the attorneys, paralegals, and other staff.  (Hyman Decl. Ex. 2.)  For each person, it has provided some biographical information and an hourly billing rate, which is the rate charged to the firm's paying clients.  (Hyman Decl. ¶¶ 20-24.)  Siegel has provided similar documentation in support of his fee application.  (See Siegel Decl. ¶¶ 2-4; Siegel Decl. Ex. C; Siegel Suppl. Decl. Ex. B)  McLaughlin & Stern has also submitted an itemized list of expenses incurred in pursuing the litigation.  (Hyman Decl. Exs. 4, 5.)

In general, plaintiffs' documentation, which seeks, in total, $1,226,041.10 in attorneys' fees and $132,899.95 in costs, is sufficiently transparent to show that their fees – with the exceptions discussed below – are reasonable.  While the award sought is substantial, it is not outlandish in light of the nature of the litigation, which was a protracted and hard-fought endeavor that culminated in a 14-day trial.  Plaintiffs' counsel have also achieved a favorable outcome for their clients, notwithstanding their limited success.  The jury awarded damages ranging from $15,000 to $60,000 as to seven of the nine plaintiffs.  Plaintiffs also requested and received injunctive relief consistent with the jury's verdict.

Both firms began work in 2004 after eight of the nine plaintiffs approached Siegel, who then enlisted McLaughlin & Stern to share litigation costs.  (Hyman Decl. ¶¶ 3-4.)  The plaintiffs retained both Siegel and McLaughlin & Stern, and the complaint in this action was filed in November of 2005.  (Id.)[5]  An extensive period of discovery ensued, including the review of thousands of documents and the taking and/or defending of dozens of depositions.  (Hyman Decl. ¶¶ 8-9, 18.)  Consistent with the number of plaintiffs and the voluminous production of documents related to plaintiffs' claims, substantial time was devoted to trial preparation, including preparation of motions in limine, among other issues.  (Hyman Decl. ¶¶ 27-28.)

   C.   Defendants' Objections

Defendants vigorously challenge plaintiffs' application, arguing that the hourly rates are too high, that the hours expended are excessive, and that the fee award should be reduced based on the time expended on unsuccessful claims and because the overall degree of success was limited.

   1.   Reasonable Hourly Rates

The reasonable hourly rate is the rate a paying client would be willing to pay.  Arbor Hill II, 522 F.3d at 183.  Courts are also to "bear in mind all of the case-specific variables" that contribute to what the hypothetical reasonable client would pay, with the understanding that the reasonable client "wishes to spend the minimum necessary to litigate the case effectively."  Id. at

---

[5] Because counsel also assisted plaintiffs with the filing of claim forms pursuant to Latino Oficers Ass'n, et al. v. City of New York, et al., No. 99 Civ. 9568, plaintiffs' fees requests begin in late 2005, when the complaint in this action was drafted.  (Hyman Decl. ¶¶ 4-5.)

190.[6]  A court should determine this rate by relying on both "its own knowledge of comparable

rates charged by lawyers in the district," Morris v. Eversley, 343 F. Supp. 2d 234, 345

(S.D.N.Y. 2004) (citing Ramirez v. N.Y. City Off-Track Betting Corp., No. 93 Civ. 682, 1997

WL 160369, at *2 (S.D.N.Y. Apr. 3, 1997)), as well as on "evidence submitted by the parties,"

Farbotko v. Clinton County of N.Y., 433 F.3d 204, 209 (2d Cir. 2005).  The size of the firm may

also be considered as a factor in determining the hourly rate, "primarily due to varying overhead

costs." Cioffi v. N.Y. Cmty. Bank, 465 F. Supp. 2d 202, 219 (E.D.N.Y. 2006).  "[C]urrent rates,

rather than historical rates, should be applied in order to compensate for the delay in payment[.]"

LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998), citing Missouri v. Jenkins, 491

U.S. 274, 283-84 (1989).

---

[6] These variables include: (1) the time and labor required; (2) the novelty and difficulty of
the questions; (3) the level of skill required to perform the legal service properly; (4) the
preclusion of other employment by the attorney due to acceptance of the case; (5) the attorney's
customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations
imposed by the client or the circumstances; (8) the amount involved in the case and the results
obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of
the case; (11) the nature and length of the professional relationship with the client; and (12)
awards in similar cases. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of
Albany ("Arbor Hill I"), 493 F.3d 110, 114 n. 3 (2d Cir. 2007), citing Johnson v. Ga. Highway
Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).  As Judge Francis recently noted,

> While the Second Circuit held in Arbor Hill that all relevant variables should be
> taken into account in ascertaining a reasonable hourly rate, some of those
> variables, such as 'the time and labor required' and 'the time limitations imposed
> by the client or the circumstances,' are more logically related to determining the
> number of hours that should be compensated, and others, such as the extent of
> success, might be considered either in setting the number of compensable hours or
> in making a further adjustment after a presumptive fee has been established.  In
> any event, as long as each factor is accounted for, it does not ultimately matter
> where in the analysis it is applied.

Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 537 n. 1 (S.D.N.Y. 2008) (citation omitted).

"A review of precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time." Vilkhu v. City of New York, 2009 WL 1851019, at *4 (E.D.N.Y. June 26, 2009) (citing cases). Here, plaintiffs request an hourly rate of $500 per hour for Hyman, $450 per hour for Siegel, rates varying from $425 to $185 for other McLaughlin & Stern lawyers,[7] $100 per hour for paralegals William Kang and Brendan Charney, and $25 per hour for work performed by law students.[8] Plaintiffs have also provided direct evidence of the attorneys' own market rates by submitting recent retainer agreements. (See Hyman Decl. Ex. 3; Siegel Decl. Ex. B.) These documents demonstrate that clients of Siegel and McLaughlin & Stern have agreed to compensate counsel at or above these rates, and therefore these records provide some evidence that the fees requested by plaintiffs are the fee rates actually charged to paying clients.

Defendants argue that these rates are unreasonable and do not reflect the prevailing market rate for similar services.[9] Rather than submitting independent evidence showing that the rates plaintiffs request are unreasonable, however, defendants contend that the rates sought by

---

[7] Specifically, plaintiffs request $425 per hour for Janet Neschis and Paul Levinson, $350 per hour for Alan Sash, $225 per hour for Rachel Nictora, $200 per hour for Deborah Berkman, $185 per hour for Lindsay Pfeffer.

[8] Plaintiffs initially also requested fees for attorney Deanna Waldron; however, upon defendants' objection to her billing records, and in light of Waldron's minimal billings, plaintiffs have withdrawn her hours from their application. (See Pl. Reply at 7, n. 6.)

[9] Defendants have proposed that Hyman and Siegel be compensated at the lower rate of $300 and $275 per hour, respectively. They further suggest that the remainder of plaintiffs' counsel and staff be compensated as follows: Neschis at $325 per hour; Levinson, and Sash at $250 per hour; Nicotra at $150 per hour; Berkman and Pfeffer at $125 per hour, and paralegals Charney and Kang at $50 per hour.

plaintiffs' counsel have been awarded by courts in this district only to the most seasoned

counsel, who are highly experienced in a particular area of litigation.  Defendants contend that

plaintiffs' attorneys' many years of experience in civil rights litigation are not equivalent to

extensive *employment* litigation experience that would justify the higher rates.  Accordingly,

they contend that an hourly rate of $325 per hour "should serve as both a benchmark and a

ceiling" for the rates requested.  (Def. Opp. at 8.)

     The distinction drawn by the defendants between civil rights and employment litigation is

unpersuasive.  To the extent there is even a colorable difference between the two types of

litigation, plaintiffs' experience, chiefly their trial experience, is wholly transferable and

relevant.  Indeed, where, as here – and as the defendants acknowledge – the case did not involve

difficult or novel issues in employment law, but rather was proved through an assiduous review

of numerous records, including the officers' memo books, performance evaluations, overtime

slips, and disciplinary logs, as well as through the testimony of numerous officers and other

supervisors, the complexity of the case was almost entirely logistical and factual.  Accordingly,

the critical skills needed to carry the plaintiffs' burden of proof were investigative and trial-

oriented, not conceptual or based in expertise in substantive law.

     Further, it is an understatement to say that this case was hard-fought.  While defendants

have pointed to claims that plaintiffs later dropped or failed to establish, plaintiffs' account of the

ways in which defendants' vigorous defense in this case increased the difficulty and cost of

discovery are credible.[10]  Under these circumstances, a reasonable paying client would have been

---

[10] For instance, defendants' resistance to, or simple non-compliance with, plaintiffs' legitimate discovery demands necessitated repeated conferences and prolonged the discovery period.

willing to pay for the services of an experienced civil rights law firm, regardless of how much of

its practice was devoted to employment litigation (Def. Opp. at 7-9).  Accordingly, the rates

requested in this application generally comport with the rates charged in the Southern District by

lawyers with comparable experience for similar services, and the particular circumstances of this

case do not call for a reduction in the reasonable hourly rate awards for any of the attorneys who

worked on the case.

Defendants separately challenge the rates sought by plaintiffs for paralegal services,

primarily on the basis that plaintiffs have failed to provide information regarding the experience

of the paralegal staff.  While defendants are correct that the burden is on the moving party to

show that the requested fees are reasonable, plaintiffs' request of $100 per hour is on the low end

of the customary range in this district and therefore commensurate with the presumed

inexperience of plaintiffs' paralegal staff.  See Hnot v. Willis Group Holdings Ltd., No. 01 Civ.

6558, 2008 WL 1166309, at *3 (S.D.N.Y. Apr. 7, 2008) (finding that "there is ample support for

$150 per hour as a reasonable rate for paralegals in this District"); Morris v. Eversley, 343 F.

Supp. 2d 234, 248 (S.D.N.Y. 2004) (billing paralegal time at $125 per hour).  Accordingly, the

Court finds that plaintiffs' request of $100 per hour is a "reasonable" hourly rate.

        2.    Hours Reasonably Expended

After assessing reasonable rates, the court must then determine the reasonable number of

hours billed to the matter in order to calculate the presumptively reasonable fee.  See Arbor Hill

II, 522 F.3d at 189-90.  In reviewing the fee application, the Court must exclude hours that were

not "reasonably expended."  Hensley, 461 U.S. at 434.  To do so, the Court must look not only to

the "contemporaneous time records that specify for each attorney, the date, hours expended, and

nature of the work done," but also "to its own familiarity with the case . . . and its experience generally."  New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir.1983); see also Clark v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992).  Where documentation of billable hours expended is deficient, the Court may reduce the fee award accordingly.  See Hensley, 461 U.S. at 433.  This reduction may be done either by excluding "excessive, redundant or otherwise unnecessary hours" from the calculation, Quarantino, 166 F.3d at 425, or by making an across-the-board reduction, or percentage cut, in the number of hours.  See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997).  In determining whether hours should be excluded, the inquiry is not based on what effort appears necessary in hindsight, but rather on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Grant, 973 F.2d at 99.

Here, plaintiffs have submitted contemporaneous time records in support of their motion. The records are arranged by date and specify which timekeeper performed the services, provide a description of the tasks performed, and state the number of hours expended on the tasks. Defendants object to nearly all of plaintiffs' fees and contend that the Court should exclude from plaintiffs' fee application $235,949 for "unrelated claims," $480,072 for "vagueness," and $340,987 for "block billing."  Putting to one side that defendants' calculations are largely unhelpful – even for considering across-the-board reductions – because defendants have, without adequate notation, double- or triple-listed the same item in multiple categories, the Court will address each of defendants' objections in turn.

        a.    Vague or Block Billing

First, defendants claim that many of counsel's billing entries are too vague or

impermissibly "block-billed" to accurately determine whether or not the claimed hours were reasonably necessary.  A court can reduce entries that "are too vague to sufficiently document the hours claimed," Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir. 1998), because entries lacking sufficient detail "cannot be evaluated for reasonableness." Ursa Minor Ltd. v. Aon Fin. Products, Inc., No. 00 Civ. 2474, 2001 WL 1842042, at *6 (S.D.N.Y. May 30, 2001). See Kirsch, 148 F.3d at 172 (upholding reduction of 20 percent for entries such as "letter to court," "staff conference," or "work on motion"); see also Trs. of the Bricklayers & Allied Craftworkers Local 5 N.Y. Ret., Welfare & Training Funds v. Helmer-Cronin Constr., Inc., No. 03 Civ. 748, 2005 WL 3789085, at *5 (S.D.N.Y. Oct. 24, 2005) (20 percent reduction in the total number of hours billed where the majority of the record consisted of vague entries such as, "Study and Review file," "Telephone call with client," "Letter to Silkey," and "Research").

Defendants argue that a substantial fraction of plaintiffs' time entries (such as "organization of defendant discovery production" or "preparation for direct exam of Sergeants") neglect to specify the subject matter of the task performed, and that those entries therefore warrant an across-the-board reduction, either because it is "impossible for the Court to accurately and equitably determine what the appropriate award should be," or because "the comingling of tasks makes it impossible to determine the amount of hours plaintiffs legitimately devoted to their successful claims."  (Def. Opp. at 24.)

As to the first assertion, plaintiffs' records are, for the most part, detailed enough. Entries that do not specify the nature of the work performed, or for which it is difficult or impossible to infer the nature of the work performed from the context of the entry do occur, but such entries are hardly pervasive.  One exception involves plaintiffs' vague or block billing of

travel time.  Because "[c]ourts in this Circuit regularly reduce attorney's fees by 50% for travel time," Gonzalez v. Bratton, 147 F. Supp. 2d 180, 213 n.6 (S.D.N.Y. 2001), it is not appropriate to lump travel time together with fully compensable time.  See Spalluto v. Trump Int'l Hotel & Tower, 2008 WL 4525372, at *11 (S.D.N.Y. Oct. 2, 2008) (explaining that a reduction in the hourly rate applied to time traveling is warranted "because of the lack of productivity that results when an attorney travels to appointments").  In some cases plaintiffs' travel time is block billed, as in the entry "Van Glahn deposition, travel to NYC," (Siegel Decl. Ex. C), and in others – particularly court appearances – several hours are billed where the court appearance itself was, by this Court's recollection, far less than an hour, suggesting that the travel time is necessarily included in the time billed.  Rather than comb through every entry, comparing and contrasting various lawyers' entries for each disputed event to attempt to determine what portion of the block-billed entry is attributable to travel time, however, the Court will simply reduce each disputed entry by 35 percent, resulting in a reduction of $9,673.60 for McLaughlin & Stern and a reduction of $2,756.25 for Siegel.[11]  See Hnot, 2008 WL 1166309, at *6 (finding that "reductions for block-billing" may be appropriate in cases where the block-billing "mix[es] together tasks that [are] not all compensable, or not all compensable at the same rate").  This exception aside, the level of detail with which counsel's records were kept is sufficiently detailed to accurately determine whether or not the claimed hours were reasonably necessary.

Defendants' assertion that the comingling of tasks makes it impossible to calculate the number of hours that plaintiffs legitimately devoted to their successful claims is really an

---

[11] Although Siegel contends that he has "adjusted any travel time to 50% in accordance with [this Circuit's practice]," he does not appear to have done so with all entries, such as his travel time to and from Florida in connection with the deposition of Van Glahn.

argument about whether the court should deduct "hours dedicated to severable unsuccessful claims," Quaratino, 166 F.3d at 425. This argument is more properly addressed in the section that follows. Accordingly, while defendants' objections warrant some minor adjustments, an across-the-board percentage reduction for vagueness or block billing is not appropriate.

b.     Excessive and Redundant Hours

Next, defendants argue that counsel engaged in excessive billing, in that plaintiffs' counsel overstaffed the case and spent an excessive number of hours on virtually every phase of the litigation from the drafting of the complaint to the completion of post-trial motions. It is well settled that hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from the calculation of a reasonable fee. Kirsch, 148 F.3d at 173; see also Hensley, 461 U.S. at 434. Although certain of defendants' arguments have merit – especially with respect to the hours reasonably devoted to post-trial motions, an issue that is addressed in a separate section of this Opinion – defendants' charge that plaintiffs' application is "replete" with excessive billing is overstated.

While defendants paint their objections with a broad brush, they offer only three concrete examples of excessive billing – that plaintiffs billed 78 hours to draft a 33-page complaint, that court conferences were over-attended, and that four attorneys traveled to Florida to depose defendant Van Glahn. As to the drafting of the complaint, the time billed – while substantial – is not excessive given the number of plaintiffs in this action and the number of claims alleged.

Defendants' two complaints about overstaffing have more merit. While it is common practice for a lawyer to bring a colleague to assist at a deposition or at a court proceeding, see Ass'n for Retarded Children, 711 F.2d at 1146 ("prevailing parties are not barred as a matter of

law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist"), there is no reason, and plaintiffs offer none, why three attorneys – two of them senior partners – were needed to attend routine conferences, or why *four* lawyers were needed to depose defendant Van Glahn.  However important that deposition, it is implausible that two additional attorneys were needed to "observe" Van Glahn (Siegel Decl. ¶ 6).  See Williams, 975 F. Supp. at 327-28 (finding that it is "proper to reduce a fee request when two or more attorneys have duplicated each other's work, since some of the work was unnecessary and the time claimed thus was unreasonable").   Accordingly, and because the Court has no way to determine the relative contributions of the attorneys present, the hours associated with the deposition of Van Glahn will be reduced by 50 percent for both McLaughlin & Stern and Siegel.

Similarly, there is no reason that four lawyers needed to be present at counsel table throughout the fourteen-day trial.  Although defendants had three experienced lawyers from the Corporation Counsel's Office representing them throughout the trial – and therefore cannot reasonably object to the vast majority of the hours for which plaintiffs are requesting compensation – four attorneys is one too many.  Whether Siegel's contribution was essential is especially questionable.  His role at trial was largely passive,[12] and his bills reflect that other than his time attending court appearances, his role in the case was minimal and consisted largely of "reviewing" documents to keep abreast of developments in the case.  This conclusion endures even taking into account Siegel's decision not to bill certain hours for the purposes of this fee

---

[12] At trial, Hyman conducted the majority of the questioning of witnesses and colloquy with the Court; Sash argued the legal points not addressed by Hyman, and it was evident to the Court that Nicotra, the junior lawyer on the team, was responsible for, and most familiar with, the documentary material.  Siegel rarely spoke and questioned only one witness.

application (Siegel Decl. ¶ 6).  Therefore, with respect to the issue of over-staffing, plaintiffs

have not provided sufficient support to satisfy their burden of proving that the services of all of

the attorneys present were necessary and reasonable.

Accordingly, while plaintiffs' staffing patterns and exercise of billing judgment were, for

the most part, reasonable, there are specific hours for which compensation is sought that reflect

duplicative work.  It is therefore appropriate to reduce the fees associated with Siegel's court

appearances and his attendance at the deposition of Van Glahn by 50 percent, a total dollar

reduction of $24,806.25,[13] and to reduce the fees associated with McLaughlin & Stern's staffing

of the Van Glahn deposition by 50 percent, a total dollar reduction of $9,025.

c.   Unsuccessful Claims

In calculating reasonable hours expended, the court should deduct "hours dedicated to

severable unsuccessful claims."  Quaratino, 166 F.3d at 425.  A court need not reduce the

number of hours reasonably expended where the "successful and the unsuccessful claims were

interrelated and required essentially the same proof."  Murphy v. Lynn, 118 F.3d 938, 952 (2d

Cir. 1997) (citing Hensley and collecting cases); see also LeBlanc-Sternberg, 143 F.3d at 762

("When a plaintiff has . . . prevailed on fewer than all of his claims, the most important question

in determining a reasonable fee is whether the failed claim was intertwined with the claims on

which he succeeded.").

Defendants argue that because plaintiffs were unsuccessful on a number of their claims,

the hours spent on those unsuccessful claims should be excluded in considering the amount of a

---

[13] Some of Siegel's entries contained block billing.  Where there was doubt about
whether the time was truly excessive, the hours were not reduced.

reasonable fee.  Specifically, defendants contend that the time plaintiffs spent litigating claims

related to alleged violations after Van Glahn left the police force in 2004 is "totally unrelated" to

the time they spent litigating their successful claims, and therefore that $199,317.50 for

McLaughlin & Stern and $36,622.50 for Siegel should be deducted from plaintiffs' application.

(See Canfield Decl. Exs. A, B.)  The issue is whether the claims on which plaintiffs failed are

sufficiently related to the prosecution of claims on which they succeeded, such that the time

spent on the failed claims should be compensated.

Here, plaintiffs' claims of race discrimination and retaliation share a common core of

facts and are sufficiently related that the failure of several of the plaintiffs' claims is not in itself,

sufficient reason to reduce the number of hours reasonably expended.  Plaintiffs' claims of

racially discriminatory denial of overtime necessarily intersect with their retaliation claims,

given that the protected activity in which plaintiffs engaged was to complain about being

discriminated against on the basis of race by being denied voluntary overtime.

Further, even if these claims could be disaggregated, defendants squarely reconnected

them at trial when they challenged whether plaintiffs had a good faith belief that they were being

discriminated against when they filed their EEOC and other complaints.  While the jury did not

ultimately credit plaintiffs' allegations about discrimination and denial of overtime, evidence

relevant to those claims was necessary to plaintiffs' establishing a successful retaliation claim.

Accordingly, these claims were "intertwined with the claims on which [plaintiffs] succeeded."

LeBlanc-Sternberg,143 F.3d at 762.  That plaintiffs' race discrimination claims ultimately

proved to be a relatively slender reed does not matter.  As this Court has already noted, "[c]laims

are often mutually supporting, and one claim, even if legally weak, can lend atmosphere and heft

to a superficially separate cause of action." Starkey v. Somers Central School Dist., 02 Civ. 2455(SCR), 2008 WL 5378123 (S.D.N.Y. Dec. 23, 2008). A fortiori, here, where plaintiffs were required to demonstrate a good faith basis for making their unsuccessful race discrimination claims in order to prevail on their retaliation claim, it is not appropriate to reduce the hours plaintiffs reasonably expended on their unsuccessful claims.

3.    Extent of Plaintiffs' Success

Finally, defendants argue that the presumptively reasonable fee should be reduced by at least fifty percent because the extent of plaintiffs' success was minimal when compared to the relief originally sought. This argument has merit. While plaintiffs did achieve a successful outcome, obtaining damages of $235,000 in damages for what the jury found were denials of their constitutional rights, the Supreme Court has "consistently stressed the importance of the *degree* of the plaintiff's success in the litigation as a factor affecting the size of the fee to be awarded." Kassim v. City of Schenectady, 415 F.3d 246, 253 (2d Cir. 2005) (emphasis added). Specifically, in Hensley, the Supreme Court directed district courts to review the presumptively reasonable fee in light of whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" Id. at 434. As the Second Circuit has recently explained, "[b]oth the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." Barfield v. N.Y. City Health and Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008). "If a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . even where the plaintiff's claims were interrelated,

19

non-frivolous, and raised in good faith." Id., quoting Hensley, 461 U.S. at 436.

Here, defendants' argument that plaintiffs achieved limited success in relation to the relief they originally sought is persuasive.  While plaintiffs' claims arise out of a common core of facts, plaintiffs succeeded on only one of their many claims – and then succeeded only in part. The jury awarded plaintiffs compensatory damages in the amount of $235,000 for discrete events of retaliation on the part of a single superior lasting less than a year – not the several millions in compensatory and punitive damages the plaintiffs sought for violations allegedly committed by five named defendants and half a dozen other commanders, stretching from 2003 until the date of trial.[14]  Accordingly, a fee reduction is warranted.

In determining the degree of the reduction, the analysis centers "on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435.  In the instant case, the successful claims were a small fraction of those litigated or presented to the jury.  Of course, plaintiffs' level of success cannot be determined by the application of a mechanical ratio, see Hensley, 461 U.S. at 435 n. 11, but it is clear that plaintiffs' claims for denial of overtime and ongoing retaliation were the crux of the vast recovery being sought, and were the center of counsel's attention throughout years of discovery.  Even putting to one side those claims that were dismissed or abandoned prior to trial,

_____

[14] Moreover, the disproportionate number of failed claims is at least in part attributable to counsel's failure prior to trial to clearly identify the elements relevant to each cause of action. Because counsel appeared to conceive plaintiffs' case as an undifferentiated mass of unfair treatment, the Court was required to press plaintiffs throughout the trial to identify the particular adverse actions they claimed were the product of discrimination or retaliation and the particular police officials they claimed were responsible for the alleged violations.  Had counsel more carefully analyzed their claims, weaker contentions could have been eliminated earlier, and the cost of litigation reduced.

it was precisely these recovery-rich ongoing violations that the jury did not credit.  While a successful private action for damages "contributes significantly to the deterrence of civil rights violations in the future," City of Riverside v. Rivera, 477 U.S. 561, 575 (1986) (considering the issue in the context of police misconduct), in light of the fact that plaintiff did not secure anywhere near the full "quality and quantity" of the relief they initially sought, a 25 percent reduction in the presumptively reasonable fee is appropriate.  See Vilkhu, 2009 WL 1851019, at *18 (reducing the presumptively reasonable fee by 20 percent).

                4.     Total Attorneys' Fee Award

For the reasons set forth above, the presumptively reasonable fee, after making the reductions in the reasonable number of hours described above ($945,123 for McLaughlin & Stern and $125,707.50 for Siegel), is reduced by 25 percent on account of the limited success achieved by plaintiffs.  Accordingly, as to plaintiffs' main application, and not including the fees sought for work performed on post-trial motions, reasonable attorneys' fees are awarded to plaintiffs in the amount of $708,842.25 for McLaughlin & Stern and $94,280.63 for Siegel.

IV.    Determination of Costs

In addition to compensation for hours reasonably expended, a prevailing party is entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg, 143 F.3d at 763 (internal quotation marks omitted).  The costs awarded under § 1988 include not only those ordinarily recoverable pursuant to 28 U.S.C. § 1920 and Rule 54(d)(1) of the Federal Rules of Civil Procedure, but also any additional expenses ordinarily charged in the particular legal marketplace. See U.S. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989) (holding that reasonable,

identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable; see also

Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2d Cir. 1987) (providing a

non-exclusive list of recoverable costs, including photocopying, travel and telephone costs);

Anderson v. City of New York, 132 F. Supp. 2d 239, 245 (S.D.N.Y. 2001).  Payment is not

permitted, however, for items that constitute routine office overhead.  See LeBlanc-Sternberg,

143 F.3d at 763.

Plaintiffs seek $131,019.88 in costs, not including the $1,880.07 in costs associated with

their post-trial motions, which the Court will address separately.  These costs consist primarily of

the ordinary and usual costs attendant to litigation, including expenses such as court filing fees,

photocopying, legal research, and travel.  (Hyman Decl. ¶¶ 35-39; Hyman Decl. Ex. 4, 5.)

Defendants challenge a number of these costs as excessive or unwarranted.

First, defendants contend that plaintiffs' computerized legal research costs should not be

reimbursed because plaintiffs have not produced evidence that their attorneys typically bill their

clients for Westlaw charges rather than absorbing the costs into overhead.  While this position

previously found some support in the caselaw, as this Court recently explained, "in accord with

Arbor Hill's rationale for finding online research fees generally recoverable, 'common sense

dictates that if [counsel] had performed their research using books, the increase in their fees

would have grossly overshadowed the relatively modest amount they spent on Westlaw,'"

Imbeault v. Rick's Cabaret Intern. Inc., No. 08 Civ. 5458, 2009 WL 2482134 (S.D.N.Y. Aug. 13,

2009), quoting Wise v. Kelly, 620 F. Supp. 2d 435, 456 (S.D.N.Y. 2008).  Accordingly, the

$7,595.24 in Westlaw charges will be included in the award.

More persuasive are defendants' objections to plaintiffs' photocopying and printing charges.  Expenses for photocopies have been expressly identified as "'ordinarily charged to clients' and therefore recoverable," Anderson, 132 F. Supp. 2d at 246 (finding taxation of copying costs appropriate pursuant to 42 U.S.C. § 1988), but plaintiffs must make clear what documents were copied, how many copies were made, the cost per page charged for copying, and why the copies were necessary.  Here, although the duration and scope of the case make voluminous photocopying plausible, plaintiffs have not provided any information about why the copies were necessary, see Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 173 (2d Cir. 1996), nor have they justified a rather substantial charge of 30 cents per page, where the recent "going rate" in this district is 10 cents per page, see Wise, 620 F. Supp. 2d at 457, citing Staples, Inc. v. W.J.R. Assoc., No. 04 Civ. 904, 2007 WL 2572175, at *10 (E.D.N.Y. Sept. 4, 2007) (citing cases).  Defendants' proposed reduction to 15 cents per page is thus reasonable.  Taking into account both this reduction and an additional reduction to account for what – at least in the absence of any explanation of what was being photocopied or why – appears to be excessive photocopying, plaintiffs' charges for photocopying are reduced by 60 percent, or $10,834.98.  Likewise, plaintiffs' per-page charge for faxing is reduced from 55 cents per page to 15 cents per page, and accordingly, the total cost reduced from $281.60 to $76.80.

Defendants also object to the $9,027.21 for charges associated with certain of plaintiffs' discovery or trial supplies.  The Court agrees with defendants that plaintiffs are not entitled to recover for supplies such as labels, exhibit binders, and tabs because costs for these items are part of a law firm's overhead, which is already paid for in the attorneys' hourly fees.  See Vernon v. Port Auth. of New York and New Jersey, 220 F. Supp. 2d 223, 232 (S.D.N.Y. 2002).

23

Accordingly plaintiffs cannot recover for the $9,027.21.

Next, defendants challenge the $3,235 in costs associated with the deposition of defendant Van Glahn.  For reasons substantially similar to those discussed above, four attorneys were not needed to depose this defendant.  At most, two attorneys could be justified.  Accordingly, the costs associated with counsel's travel to Florida will be reduced by half to $1,617.50.

Finally, defendants object to the $17,116 associated with court transcripts, primarily because the actual cost of the transcripts according to the invoice is $16,995 (see Hyman Decl. Ex. 5), and because the charges of the expedited transcripts were obtained principally for the convenience of the plaintiffs – not as a necessity – therefore the charges associated with them are not recoverable.  In support of this proposition, defendants cite to case law discussing 18 U.S.C. § 1920, which finds that "[t]o assess the losing party with the premium cost of daily transcripts, necessity – beyond the mere convenience of counsel – must be shown."  Callela v. Onassis, 487 F.2d 986, 999 (2d Cir. 1973).  However, an award pursuant to § 1988 includes "not only those costs ordinarily taxable pursuant to 28 U.S.C. § 1920, as implemented by Fed. R. Civ. P. 54(d)(1) . . . but also those reasonable costs that are ordinarily charged to clients in the legal marketplace."  See Anderson, 132 F. Supp. 2d at 245.  Thus, the appropriate standard is not whether such costs would be permitted under § 1920, but whether the costs constitute reasonable, ordinarily billed expenses of litigation.  While defendants are correct that plaintiffs had four lawyers at counsel table as well as paralegal staff,  and therefore should have been able to take adequate notes during the trial to prepare for cross-examination, follow the court's evidentiary rulings, or prepare an effective summation, the Court is persuaded that because

defendants themselves sought daily transcripts – indeed the parties agreed to share those costs at

the outset of trial – the expenses associated with daily copy are reasonable.  Although defendants

assert that, in accordance with their agreement with plaintiffs, they have already paid for "a

portion" of the costs, defendants nowhere provide any invoice showing what portion of the costs

they have already paid.  Accordingly, the costs taxed are reduced from $17,116 to $16,995 to

reflect the actual invoice, but no further reduction will be made.

As to defendants' remaining miscellaneous objections, they are without merit either

because – as with the disputed expert fees – they are related to defendants' argument about non-

recovery for failed claims or because they confuse the analysis for recovery of costs under §

1920 with the analysis for recovery under the fee-shifting statutes at issue here.  Accordingly,

$109,214.39 of costs are allowed.

V.    Post-Trial Motions

There is no dispute that a prevailing party may receive compensation for post-trial

motions or for preparing the fee application.  See Baird v. Boies, Scheiller & Flexner LLP, 219

F. Supp. 2d 510, 518 (S.D.N.Y. 2002).  The issue is one of reasonableness, however, not

entitlement.  See id. ("If the fee claims are exorbitant or the time devoted to presenting them are

unnecessarily high, the judge may refuse further compensation or grant it sparingly" (internal

quotation marks and further citation omitted)).  Here, plaintiffs request $108,949.50 in attorneys'

fees and $1,880.07 in costs associated with their motion for attorneys' fees and their successful

motion for permanent injunctive relief.  As defendants point out, these amounts are grossly

excessive.

In support of plaintiffs' motion for permanent injunctive relief, plaintiffs filed a 10-page declaration and a scant 8-page brief, both of which leaned heavily on recitation of the jury's verdict and contained little law and even less legal analysis, but for which plaintiffs – one of them a partner with ten years of litigation experience – managed to bill more than 67 hours, for a total of approximately $20,000.  The Court evaluates this expenditure in light of the application itself, and counsel's experience in this area of law.  See Weingarten v. Optima Commc'ns Systems, Inc., 544 F. Supp. 2d 193 (S.D.N.Y. 2008).  Plaintiffs' proposed figure, which appears excessive on its face, is made even more questionable by the fact that the core relief requested was manifestly straightforward.  Indeed, the relief requested was so uncontroversial that the defendants – who have strenuously objected to nearly every move made by plaintiffs throughout this litigation – opposed (and then only for clarity) a trivial fraction of what plaintiffs requested. While this fact indicates that plaintiffs were wise to submit a spare application, it does not account for the outsize number of hours – and the associated costs – spent producing it.

Given that motions for injunctive relief are frequently made by civil rights law firms, and that plaintiffs are commanding hourly rates that "assume[] a certain level of expertise in discrimination law," id. at 198, the Court will exercise its discretion to "deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat" for this post-trial motion.  Kirsch, 148 F.3d at 173.  Indeed, even if counsel lacked the substantial civil rights experience they claim, the hours billed for this motion, as roughly tabulated by defendants (see Canfield Supp. Decl. Ex. G), would still be reduced because it cannot be said that "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Grant, 973 F.2d at 99.  Accordingly, the Court reduces the hours billed on this

project by 40 percent.

As to their motion for fees, plaintiffs have billed approximately 345 hours for preparation of their fee application.  Approximately 121 of those hours related to "research" for the application.  These expenditures, too, are clearly excessive, both because experienced civil rights attorneys must have previously prepared fee applications, and even if they had not, neither the application itself nor the reply required plaintiffs to address any novel or complex issues sufficient to justify the documented efforts.  Indeed, the fee application, notwithstanding its heft based on the length of this litigation and the number of attorneys staffed to the matter, was a garden-variety recitation of facts and well-established precedent.  Moreover, the number of hours spent is outside of the range for applications prepared by counsel of similar experience in similar cases.  See e.g., Brady v. Wal-Mart Stores, Inc., 455 F. Supp. 2d 157, 212 (E.D.N.Y. 2006) (finding excessive and reducing by half the 257 hours counsel billed for preparation of a fee application in an action that involved years of litigation and a jury trial).  Accordingly, the time billed for preparing the fee applications is not justified, and a reduction of hours is warranted.  As with the motion for injunctive relief, the hours expended will be reduced by 40 percent.

Finally, plaintiffs request $1,880.07 in costs associated with these post-trial motions, of which $1,098.05 is for photocopies and faxes and $782.02 is for electronic research.  For reasons identical to those discussed above, plaintiffs' electronic research costs will be reimbursed, but the per-page costs for photocopies and faxes will reduced to 15 cents per page.  Further, because the Court has no way to determine the reasonable necessity of making approximately 3,651 photocopies in support of these post-trial motions, a further reduction is again warranted.  Taking into account both reductions, plaintiffs' charges for photocopying and faxing are reduced by 60

percent, or $658.83, resulting in a total award of costs of $1,221.24.

Accordingly, with respect to plaintiffs' post-trial motions, plaintiffs are awarded fees in the amount of $65,369.70 (a reduction of 40 percent), and costs in the amount of $1,221.24.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for attorneys' fees will be granted in part and denied in part. Plaintiffs will be awarded total attorneys' fees in the amount of $868,492.58 ($769,689.45 for McLaughlin & Stern; $98,803.13 for Siegel), and total costs in the amount of $110,435.63.

SO ORDERED.

Dated: New York, New York
      September 29, 2009

GERARD E. LYNCH
United States Circuit Judge

28